UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD D. HUNGATE,

                         Plaintiff,

        v.

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                       Defendant.

Case No. C15-1514-JCC

**ORDER REVERSING AND
REMANDING CASE FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS**

Richard D. Hungate seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits.  Mr. Hungate contends the ALJ erred by misevaluating the medical evidence and that these errors resulted in a residual functional capacity (RFC) determination that failed to account for all of his limitations.  Dkt. 14 at 1-9.  Mr. Hungate further argues that the ALJ erred at step four in finding he had past relevant work as an automobile detailer.  *Id.* at 8.  Mr. Hungate contends this matter should be remanded for payment of benefits.  *Id.* at 2.  As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

In April 2013, Mr. Hungate applied for benefits, alleging disability as of March 27, 2012.

1   Tr. 18, 209-21.  Mr. Hungate's applications were denied initially and on reconsideration.  Tr. 81-

2   130.  After the ALJ conducted a hearing on January 21, 2014, the ALJ issued a decision finding

3   Mr. Hungate not disabled.  Tr. 18-31.

4                                   **THE ALJ'S DECISION**

5          Utilizing the five-step disability evaluation process,[1] the ALJ found:

6          **Step one:**  Mr. Hungate has not engaged in substantial gainful activity since March 27,
       2012, the alleged onset date.

7

8          **Step two:**  Mr. Hungate has the following severe impairments: alcohol dependence,
       bipolar disorder, anxiety disorder.

9          **Step three:**  These impairments do not meet or equal the requirements of a listed
       impairment.[2]

10

11         **Residual Functional Capacity:**  Mr. Hungate can perform a full range of work that is
       unskilled, repetitive, and routine.  He is able to perform work with no contact with the
       public and only occasional contact with supervisors and co-workers.  He is able to

12     perform work that allows him to be off-task at work seven percent of the time but still
       meeting minimum production requirements.  He is able to perform work that allows one

13     absence from work per month.

14         **Step four:**  Mr. Hungate can perform past relevant work as an automobile detailer, shop
       steward/janitor, plastic machine operator/molding machine tender and landscape laborer.

15     As such, Mr. Hungate is not disabled.

16   Tr. 20-31.  The Appeals Council denied Mr. Hungate's request for review making the ALJ's

17   decision the Commissioner's final decision.  Tr. 1-4.[3]

18                                      **DISCUSSION**

19   **A.     Medical Evidence**

20         In general, more weight should be given to the opinion of a treating physician than to a

21   non-treating physician, and more weight to the opinion of an examining physician than to a

22   _____

23   [1] 20 C.F.R. §§ 404.1520, 416.920.
     [2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
     [3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

     ORDER REVERSING AND REMANDING
     CASE FOR FURTHER ADMINISTRATIVE
     PROCEEDINGS - 2

nonexamining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where a treating or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  *Id.*  Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons supported by substantial evidence in the record for so doing."  *Id.* at 830-31.

### 1.      David Dunner, M.D.

Dr. Dunner performed a psychiatric evaluation of Mr. Hungate in August 2012.  Tr. 413-16.  In his report he indicated that Mr. Hungate met criteria for panic attack, major depressive disorder and bipolar I disorder.  *Id.*  Dr. Dunner expressed no opinion in his report with respect to Mr. Hungate's functional limitations or ability to work.  *Id.*  However, an August 2012 treatment note indicates that Mr. Hungate informed his nurse practitioner (Ms. Hutcheson) that Dr. Dunner believed "he could go back to work and that he would not necessarily qualify for Social Security disability [benefits]."  Tr. 347.  In finding Mr. Hungate's allegations of disabling symptoms and limitations not entirely credible, the ALJ noted that "the evidence of record shows that his level of functioning is not as limiting as alleged ... [f]or example in August 2012, he reported that he had just returned from vacation and that his treating physician, Dr. Dunner, felt that he would be able to return to work and 'would not' qualify for Social Security disability benefits."  Tr. 26.

Mr. Hungate argues the ALJ erred in considering his own statement about Dr. Dunner's opinion (reflected in Ms. Hutchenson's treatment note) in order to conclude that his level of functioning was not as limiting as he alleged.  Dkt. 14 at 2-3.  Specifically, Mr. Hungate argues the ALJ erred in relying on this statement because his own "understanding of [Dr. Dunner's] evaluation does not provide any medical basis for the conclusion reached by the ALJ" and "the

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

1    oral report of a mentally impaired individual as to what an examining doctor may have said is

2    not substantial evidence when the report confirms the diagnoses of three major mental

3    impairments and … [does not state] that Mr. Hungate can work." Dkt. 14 at 2-3; Dkt. 16 at 4.

4    The Court disagrees that the ALJ harmfully erred in considering the treatment note.

5          First, the ALJ mentions this treatment note in the context of discounting Mr. Hungate's

6    credibility, not in the context of evaluating the medical opinion evidence.[4]  Tr. 26.  Mr. Hungate

7    does not challenge the ALJ's credibility finding in his Statement of Issues and, pursuant to the

8    Scheduling Order, that issue is not to be considered or ruled upon.[5]  Dkt. 10 at 2.  Second, even

9    if the credibility issue were properly raised, Mr. Hungate's allegation of error is unclear.  Mr.

10   Hungate cites no legal authority indicating that the ALJ was not permitted to consider his

11   statements regarding Dr. Dunner's opinion.  Moreover, if followed logically, Mr. Hungate's

12   argument appears to be that the ALJ erred in considering his statements because, due to his

13   mental illness, he is not fully credible.  Dkt. 16 at 4.  This argument would seem to support,

14   rather than undermine, the ALJ's adverse credibility finding.  Thus, Mr. Hungate fails to meet

15   his burden of establishing error.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2011)

16   [4] In weighing the medical opinion evidence the ALJ does not discuss Dr. Dunner's opinion at all.

17   Mr. Hungate acknowledges that Dr. Dunner expressed no opinion in his written report as to
     whether he could work.  Dkt. 14 at 3.  Moreover, while Mr. Hungate notes that Dr. Dunner found
     he met the criteria for panic attack, major depression and bipolar I disorder, he does not argue

18   that the report set forth any functional limitations that the ALJ erred in failing to consider or
     include in the RFC.  As such, to the extent Mr. Hungate argues the ALJ misevaluated Dr.

19   Dunner's opinion, he does not identify any significant probative evidence in the opinion that the
     ALJ erred in failing to address.  *See Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393,

20   1394-95 (9th Cir. 1984) (The ALJ "need not discuss *all* evidence presented" to him or her but
     must only explain why "significant probative evidence has been rejected.") (citation omitted)

21   (emphasis in original).
     [5] Mr. Hungate also makes a conclusory challenge to the ALJ's credibility finding in the

22   Conclusion to his Opening Brief.  Dkt. 14 at 11.  This is insufficient to preserve the issue as it
     was not raised in the Statement of Issues nor is it directly addressed in the Discussion section of

23   the Opening Brief.  Dkt. 14; *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir.
     2003) ("[a] bare assertion of an issue does not preserve a claim.") (internal citations omitted).

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 4

("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights."); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.  We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim …").

Third, even if the ALJ had erred in considering this evidence, Mr. Hungate fails to establish the error was harmful.  *See Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012) ("The court will not reverse for errors in a Social Security disability benefits case that are inconsequential to the ultimate nondisability determination.").  The ALJ provided several other valid reasons for his adverse credibility finding, which Mr. Hungate does not challenge, including his noncompliance with medication, demonstrated improvement with medication and inconsistent statements.  *See Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996) (in evaluating claimant credibility ALJ may consider an inadequately explained failure to follow a prescribed course of treatment and inconsistent statements regarding symptoms); *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may consider evidence that medication is effective in evaluating claimant's credibility); SSR 96-7p.  As such, even if there was error, any error was harmless.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall determination).

### 2.    Reports of Improvement

Mr. Hungate also argues the ALJ improperly relied on excerpts from the record and comments by providers that Mr. Hungate "is doing well," "feels much better" and is "really steady" as indications of improvement.  Dkt. 14 at 7.  The Court disagrees.

1    First, as with the treatment note relating Dr. Dunner's opinion, the ALJ mentions Mr.

2   Hungate's improvement in the context of the adverse credibility finding, which Mr. Hungate

3   does not directly challenge.  Second, although explained with less than ideal clarity, the ALJ's

4   decision links Mr. Hungate's reports of improvement to his use of Depakote and its effectiveness

5   in controlling his symptoms.  Tr. 27 ("the medical records also reveal that when the claimant

6   takes his medications as prescribed, including Depakote, which he was reluctant to take initially

7   but testified that it has helped stabilize his mood … they have been relatively effective in

8   controlling the claimant's symptoms."); *see Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir.

9   2012) (quotation and citation omitted) (even if the ALJ explains his decision "with less than

10  ideal clarity," the Court must uphold it if the ALJ's "path may be reasonably discerned").   Mr.

11  Hungate does not challenge the ALJ's findings with respect to his improvement with medication

12  but argues only generally that "the record shows that over time [Mr. Hungate] would experience

13  periods of severe depression and periods of mania."  Dkt. 14 at 7.  Mr. Hungate fails to cite to

14  any specific evidence in the record relevant to the period of time the ALJ cites as demonstrating

15  improvement.  Mr. Hungate's conclusory assertion of error, without more, is insufficient.  *See*

16  *Greenwood*, 28 F.3d at 977.  Finally, even if the ALJ did err in considering Mr. Hungate's

17  reports of improvement in discounting his credibility, Mr. Hungate fails to establish the error was

18  harmful as he fails to challenge several other valid reasons supporting the ALJ's credibility

19  finding.  *See Carmickle*, 533 F.3d at 1162.

20          **3.      David Widlan, Psy.D.**

21          Dr. Widlan examined Mr. Hungate on two occasions on behalf of the Department of

22  Social and Health Services.  In March 2013 Dr. Widlan opined that Mr. Hungate was markedly

23  impaired in his ability to perform activities within a schedule, maintain regular attendance, be

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

1    punctual within customary tolerances without special supervision, adapt to changes in a routine

2    work setting, communicate and perform effectively in a work setting, complete a normal

3    workday and workweek without interruptions from psychologically based symptoms, maintain

4    appropriate behavior in a work setting, and set realistic goals and plan independently.  Tr. 377.

5    He further opined that Mr. Hungate was moderately limited in other basic work activities, such

6    as understanding, remembering, and persisting in tasks, following short and simple instructions,

7    and learning new tasks.  Tr. 377.  In January 2014 Dr. Widlan examined Mr. Hungate again and

8    opined that he was cognitively able to accept instruction from a supervisor for simple tasks, but

9    would struggle with this during a manic episode.  Tr. 438.  He further opined that Mr. Hungate

10   would struggle with persistence and performance consistency, did not have the coping skills

11   required to overcome his emotional impairments and would likely become "derailed" in any

12   work setting.  *Id.*  Finally, Dr. Widlan opined that given Mr. Hungate's long history of manic

13   episodes, it was unlikely that he would be able to negotiate work stressors consistently.  Tr. 437.

14         The ALJ gave Dr. Widlan's opinion "little weight" on the grounds that (1) it was

15   inconsistent with his own examination notes, (2) it was inconsistent with Mr. Hungate's

16   testimony, (3) it relied heavily on Mr. Hungate's self reports, and (4) Dr. Widlan was not a

17   treating provider and saw [Mr. Hungate] on only two occasions.  Tr. 29-30.  Mr. Hungate argues

18   these reasons are legally insufficient or are not supported by substantial evidence. [6]  Dkt. 14 at 4-

19   6.  The Court agrees.

20                          **i.  Inconsistent with Treatment Notes**

21   [6] Mr. Hungate appears to argue that Dr. Widlan's opinion is uncontradicted and that, therefore,
     the ALJ must state clear and convincing reasons supported by substantial evidence for
22   discounting the opinion.  *See Lester*, 81 F.3d at 830-31.  However, Dr. Widlan's opinion is
     contradicted by other evidence including the findings of the State nonexamining doctors.
23   Accordingly, the ALJ was required to give specific and legitimate reasons for discounting Dr.
     Widlan's opinion.  *See id.*

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 7

1    The ALJ noted "Dr. Widlan opined that [Mr. Hungate] does not have the coping skills

2    required to overcome his emotional impairments, yet Dr. Widlan's two examinations … found

3    [Mr. Hungate's] speech 'normal,' his attitude and behavior 'cooperative,' and found no specific

4    abnormal emotional responses despite Mr. Hungate's recent move from an apartment in West

5    Seattle alone to living with four other roommates in North East Seattle[.]"  Tr. 30.  An ALJ may

6    discount a doctor's opinion where it is inconsistent with the doctor's own medical records.  *See*

7    *Tommassetti v. Astrue*, 533 F.3d 1035 (9th Cir. 2008).  An ALJ may also reject an opinion that is

8    brief, conclusory, and inadequately supported by clinical findings.  *Thomas v. Barnhart*, 278

9    F.3d 947, 957 (9th Cir. 2002).  Mr. Hungate argues that the evidence cited by the ALJ is not

10   inconsistent with Dr. Widlan's opinion in any meaningful way.  Dkt. 14 at 5.  The Court agrees.

11   First, Dr. Widlan's failure to discuss Mr. Hungate's emotional response to moving

12   apartments does not undermine his findings.  The implication that Dr. Widlan's failure to discuss

13   this event somehow demonstrates Mr. Hungate's ability to cope emotionally is purely

14   speculative.  There are a myriad of reasons Dr. Widlan may not have discussed Mr. Hungate's

15   move, including the fact that, although the ALJ described the move as "recent," it in fact took

16   place after Dr. Widlan's initial evaluation and approximately nine months prior to his second

17   evaluation.  Tr. 30.  Accordingly, this is not a sufficient reason to reject Dr. Widlan's opinion.

18   Second, given the cyclical nature of bipolar disorder, the fact that Mr. Hungate was able

19   to speak normally and cooperate in the context of two examinations performed 10 months apart

20   is not inconsistent with Dr. Widlan's opinion that he is unable to cope with his emotional

21   impairments.  *See Garrison v. Colvin*, 759 F.3d 995, 1018 n. 23, 24 (9th Cir. 2014) ("the very

22   nature of bipolar disorder is that people with the disease experience fluctuations in their

23   symptoms").  Moreover, Dr. Widlan's other examination notes, which the ALJ does not discuss,

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 8

appear to support his opinion.  For instance, Dr. Widlan performed several psychological tests

including a mental status examination (MSE), trail making test and Beck Depression Inventory

(BDI).  Tr. 375-84.  The MSE reflected impaired insight and judgment and the BDI reflected a

score in the "severe" range.  Tr. 378.  Dr. Widlan also made clinical observations that Mr.

Hungate presented with flattened affect, and was withdrawn, depressed and listless.  Tr. 378,

436.  Moreover, Dr. Widlan reviewed Mr. Hungate's treatment records from 2011 through 2013,

noting a "full blown" manic episode in March 2012 during which Mr. Hungate became

delusional and grandiose, as well as other instances in September and November 2011 and June

2012 of accelerated mood and hypomania.  Tr. 435.  Based on these observations and testing Dr.

Widlan concluded that Mr. Hungate's baseline was "severe depression although he periodically

has manic episodes that can be quite destructive during which he can be prone to erratic behavior

and labile mood swings."  Tr. 437.  Thus, Mr. Hungate fails to establish that Dr. Widlan's

opinion is inconsistent with his treatment notes in any meaningful way.

In sum, substantial evidence does not support the ALJ's rejection of Dr. Widlan's opinion

as inconsistent with or unsupported by his treatment notes.

### ii.  Inconsistent with Mr. Hungate's Testimony

The ALJ found that "Dr. Widlan opined limitations due to [Mr. Hungate's] 'manic

episodes' yet [Mr. Hungate] testified he had not experienced any manic episodes in the past

year."  Tr. 30.  The ALJ further rejected Dr. Widlan's opinion that "given [Mr. Hungate's] long

history of manic episodes" he was unlikely to be able to "consistently negotiate work stressors"

as inconsistent with Mr. Hungate's statement that he experiences manic episodes about "once per

year."  *Id.*; Tr. 437.  Mr. Hungate argues that the ALJ improperly discounted Dr. Widlan's

opinion on this basis because Dr. Widlan's opinion is supported by medical records

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 9

demonstrating a continuing problem with mood disorders.  Dkt. 14 at 5.  The Court agrees.

First, Dr. Widlan's report indicates he reviewed and relied upon contemporaneous treatment notes from 2011 to 2013 to support his opinion regarding Mr. Hungate's history of mania and its limiting impact.  Tr. 435.  Specifically, Dr. Widlan points out that the treatment notes demonstrate Mr. Hungate experienced one "full-blown" manic episode in March 2012 during which he became delusional and grandiose, but that he also experienced several other instances of hypomania and elevated mood in 2011 and 2012.  Tr. 435.  The ALJ does not address Dr. Widlan's review or interpretation of these treatment records in his opinion.

Second, while Mr. Hungate did state that he believed he had one manic episode every year, he also indicated that he did not always recognize when he was experiencing a manic episode.  Tr. 45, 49 ("mania, a lot of times, I'm in denial about it, and everybody else seems to know I'm manic, and I will deny it, so it'll occur a long period of time"; "I don't really know when I'm sick, I guess.").  Mr. Hungate's lack of awareness regarding the status of his mental health was also noted by his sister.  Tr. 65 ("I've seen mania within the last year…there are times when he is manic, and I know he is, he'll deny it to me.").  Moreover, the ALJ discounted Mr. Hungate's credibility[7] in this case based, in part, on his inconsistent testimony.  Tr. 27-28 ("the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable").  Under the circumstances, it is problematic for the ALJ to selectively rely on some of Mr. Hungate's statements (despite finding him less than credible) as grounds for discounting a medical opinion which is based on clinical testing, observation and independent review of medical records.

---

[7] Mr. Hungate does not properly challenge the ALJ's adverse credibility finding in this case.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

1    Accordingly, substantial evidence does not support the ALJ's rejection of Dr. Widlan's

2    opinion as inconsistent with Mr. Hungate's own statements.

3                        **iii.   Self-Reports**

4        The ALJ also rejected Dr. Widlan's opinion as based heavily on Mr. Hungate's self

5    reports, which the ALJ found not credible.  Tr. 30.  If a provider's opinions are based "to a large

6    extent" on an applicant's self-reports and not on clinical evidence, and the ALJ finds the

7    applicant not credible, the ALJ may discount the provider's opinion.  *Tommasetti v. Astrue,* 533

8    F.3d 1035, 1041 (9th Cir.2008); *see also Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir.

9    2005).  However, when an opinion is not more heavily based on a patient's self-reports than on

10   clinical observations, there is no evidentiary basis for rejecting the opinion.  *See Ryan v. Comm'r*

11   *of the Soc. Sec. Admin.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008).  Mr. Hungate does not

12   properly challenge the ALJ's adverse credibility finding here.  However, as previously noted, Dr.

13   Widlan's opinions included observations, diagnoses, psychological testing, and review of

14   medical records in addition to Mr. Hungate's self-reports.  Tr. 375-79; 434-48.  The ALJ offered

15   no basis for his conclusion that these opinions were based more heavily on Mr. Hungate's self-

16   reports, and substantial evidence does not support such a conclusion.

17                    **iv.   Opinions Based on Two Examinations**

18       The ALJ also appears to discount Dr. Widlan's opinion on the grounds that he is not a

19   treating doctor and only examined Mr. Hungate on two occasions.  Tr. 30.  However, this is not a

20   specific and legitimate reason, on its own, to reject an examining doctor's opinion.

21       In sum, the ALJ failed to provide specific and legitimate reasons, supported by

22   substantial evidence, to discount Dr. Widlan's opinion.  Dkt. 14 at 4.  As he opined Mr. Hungate

23   was more limited than the ALJ found, the ALJ's error was harmful, and remand for

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 11

1    reconsideration of Dr. Widlan's opinion is appropriate.[8]

2            **4.      Diane Hutcheson, ARNP**

3            Mr. Hungate argues the ALJ erred in failing to address the treatment notes of his treating

4    nurse practitioner, Diane Hutcheson.  Dkt. 14 at 4.  Specifically, Mr. Hungate points to Ms.

5    Hutcheson's reference to various symptoms including anxiety and weight loss, labile affect,

6    irritability, anger, negative mood, illogical, tangential thought process and grandiose thought

7    process "bordering on vocalizing delusions" and that he "can be impulsive" and has "poor

8    judgment" and will get "flagrantly manic very grandiose and paranoid."  *Id.* (referring to Tr. 330,

9    365).  Mr. Hungate also cites to Ms. Hutchesen's treatment note stating that "he cannot hold a

10   job and needs to apply for Social Security."  Tr. 349.

11           In determining whether a claimant is disabled, an ALJ may consider "other source"

12   witnesses such as nurse practitioners, physicians' assistants and counselors as well as non-

13   medical sources.  *See* 20 C.F.R. § 404.1513(d).  Other source testimony regarding a claimant's

14   symptoms or how an impairment affects his or her ability to work is competent evidence, and

15   cannot be disregarded without comment.  *See id.*; *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th

16   Cir. 1993).  This is particularly true for such "other sources" as nurses and medical assistants.

17   *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly

18   assumed a greater percentage of the treatment and evaluation functions previously handled

19   primarily by physicians and psychologists," their opinions "should be evaluated on key issues

20   ───────────────
     [8] Mr. Hungate argues that Dr. Widlan's report "should be controlling and should be accepted as a
21   matter of fact."  Dkt. 14 at 6.  The regulations provide that if a treating physician's opinion is
     "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not
22   inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling
     weight."  20 C.F.R. § 404.1527(d)(2).  The regulation does not apply in this case, however, as
23   Dr. Widlan is an examining source, not a treating source.  Moreover, there is conflicting medical
     evidence in the record which the ALJ must reevaluate and reweigh on remand.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 12

1    such as impairment severity and functional effects, along with the other relevant evidence in the

2    file.").  In order to discount the testimony of other source witnesses, the ALJ must give reasons

3    that are germane to each witness.  *Dodrill*, 12 F.3d at 918-19.  The ALJ "need not discuss *all*

4    evidence presented" to him or her but must only explain why "significant probative evidence has

5    been rejected."  *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

6    (citation omitted) (emphasis in original); *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd

7    Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

8         With respect to Ms. Hutcheson's notes reciting Mr. Hungate's symptoms, Mr. Hungate

9    fails to explain how these symptoms are significant probative evidence of greater limitations than

10    those already incorporated in the ALJ's decision.  Dkt. 14 at 6-7.  As, such, the ALJ did not err

11    in failing to specifically discuss these notes.

12         However, the ALJ did err in failing to address Ms. Hutcheson's opinion that Mr. Hungate

13    "cannot hold a job and needs to apply for Social Security."  Tr. 349.  The Commissioner argues

14    that that this was not significant probative evidence because it was an opinion on the ultimate

15    issue of disability, which is reserved to the Commissioner.  Dkt. 15 at 10; *see* 20 C.F.R. §

16    404.1527(d)(1) (the Commissioner is "responsible for making the determination or decision

17    about whether you meet the statutory definition of disability…A statement by a medical source

18    that you are 'disabled' or 'unable to work' does not mean that we will determine that you are

19    disabled.").  However, this was an opinion regarding the effect of an impairment on Mr.

20    Hungate's ability to work, the ALJ was not permitted to ignore it without comment.  *See Dodrill*,

21    12 F.3d at 918-19.  The ALJ did not reject Ms. Hutcheson's opinion because it was an issue

22    reserved to the Commissioner and, as such, the Commissioner's argument constitutes an

23    improper post hoc rationalization which the Court cannot rely upon to affirm the ALJ's decision.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 13

*See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking").  Moreover, Ms. Hutcheson's opinion that Mr. Hungate "cannot hold a job" does not appear to be a conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1), but, rather an assessment based on her observation and treatment of Mr. Hungate.  *See Hill v. Astrue*, 698 F.3d 1153 (9th Cir. 2012) (doctor's statement that claimant would be "unlikely" to work full time was not a conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1) but an assessment based on objective medical evidence including claimant's medical and mental impairments as well as the inability to afford treatment).  This error was not harmless as the limitation opined by Ms. Hutcheson is greater than that found by the ALJ.

Accordingly, on remand, the ALJ should address Ms. Hutcheson's opinion that Mr. Hungate cannot hold a job.

### 5.     Community Psychiatric Clinic

Mr. Hungate contends the ALJ erred by relying only on brief excerpts from Community Psychiatric Clinic records to support the denial of benefits and ignoring the remainder of the records.  Dkt 14 at 6.  Specifically, Mr. Hungate notes that the records described him as having an increase in sleep, a decrease in appetite, energy problems and problems with concentration, making decisions, anhedonia, and thoughts of worthlessness, trembling in his hands and that he had problems showing up to therapy.  Tr. 395-97, 422-24.  Mr. Hungate also notes that in September 2013 he reported his mood had been stable but several months later experienced a week of severe depression when he did not feel like doing anything.  Tr. 419-21.

The ALJ "need not discuss *all* evidence presented" to him or her but must only explain

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 14

1    why "significant probative evidence has been rejected." *Vincent*, 739 F.3d at 1394-95.  Here,

2    Mr. Hungate merely recites various symptom reports from the treatment records but fails to point

3    to any opinion setting forth specific functional limitations or indicating how these symptoms

4    impact his ability to perform work-related tasks.  Dkt. 14 at 6-7.   Mr. Hungate does not explain

5    how the evidence he lists is significant or probative of greater limitations than those already

6    incorporated into the ALJ's decision.  Thus, the ALJ did not err in failing to discuss these

7    records.

8       **6.    State Agency Doctors**

9          Mr. Hungate argues the ALJ erred in rejecting the opinions of his treating and examining

10   doctors and instead relying on the opinions of the State Agency nonexamining consulting

11   psychologists Bruce Eather, Ph.D. and John Robinson, Ph.D.[9]  The Court agrees.

12         "An ALJ may reject the testimony of an examining, but non-treating physician, in favor

13   of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing

14   so, and those reasons are supported by substantial record evidence."  *Roberts v. Shalala*, 66 F.3d

15   179, 184 (9th Cir. 1995) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

16   However, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial

17   evidence that justifies the rejection of the opinion of either an examining physician or a treating

18   physician."  *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996).  As discussed above, because the

19   ALJ did not properly evaluate the examining opinion of Dr. Widlan, the Court concludes that the

20   ALJ did not set forth specific and legitimate reasons that are supported by substantial evidence in

21   _____

22   [9] Mr. Hungate also alleges in his Statement of Issues that the ALJ failed to account for limitations
     on concentration, persistence and pace as opined even by the State agency nonexamining

23   doctors.  Dkt. 14 at 1-2.  However, Mr. Hungate does not explain this argument and the State
     Agency doctors determined that Mr. Hungate could complete routine tasks over a normal eight-
     hour workday with customary breaks.  Tr. 89.  Accordingly, this argument fails.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 15

the record for his decision to give greater weight to the opinions of the nonexamining state agency consultants, while giving less weight to the opinions of the examining doctor. On remand, the ALJ must reevaluate the opinions of Dr. Eather and Dr. Robinson along with the opinion of Dr. Widlan.

**B.     RFC and Steps Four and Five**

As discussed above, the ALJ erred in evaluating the medical evidence. Following remand, the ALJ should reevaluate the medical evidence as discussed above, re-assess and determine Mr. Hungate's RFC, and obtain vocational expert testimony at step five, if appropriate. Because this case must be remanded due to the issues discussed above, the Court need not reach Mr. Hungate's other assignments of error.

**C.     Scope of Remand**

In general, the Court has discretion to remand for further proceedings or to award benefits. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 1990). The Court may remand for benefits where 1) the record is fully developed and further administrative proceedings would serve no useful purpose; 2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and 3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, it is not clear from the record that the ALJ would be required to find Mr. Hungate

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 16

1  disabled if the evidence were properly considered.  There is conflicting medical evidence which

2  must be reevaluated, reweighed and resolved by the ALJ.  Accordingly, it is appropriate to

3  remand this case for further administrative proceedings.

4                                                    **CONCLUSION**

5          For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this

6  case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. §

7  405(g).

8          On remand, the ALJ should 1) reevaluate the medical evidence including the opinions of

9  Dr. Widlan, Dr. Eather and Dr. Robinson, 2) address Ms. Hutcheson's opinion; 3) reassess Mr.

10  Hungate's RFC; and 4) reassess steps four and five (if required) of the sequential evaluation

11  process with the assistance of a vocational expert as necessary.

12

13          DATED this 9th day of June, 2016.

14

15

16          _____

17          JOHN C. COUGHENOUR
            United States District Judge

18

19

20

21

22

23

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 17